IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DONELL KING,

                Plaintiff,

      vs.

ROB JEFFREYS, Director of the Nebraska
Department of Correctional Services,
individually and in their Official Capacities;
TAGGART BOYD, Warden of the Reception
& Treatment Center, individually and in their
Official Capacities; and KYLE SIMMONS,
Correctional Officer at the Reception &
Treatment Center, individually and in their
Official Capacities;

                Defendants.

**4:25CV3022**


**MEMORANDUM AND ORDER**

This matter is before this Court to perform its initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A of Plaintiff Donell King's ("Plaintiff") Complaint, Filing No. 1, and supplement, Filing No. 2, (collectively the "Complaint") brought under 42 U.S.C. § 1983 to determine whether summary dismissal is appropriate. For the reasons set forth below, the Court finds that it is, but in lieu of dismissal this Court shall sua sponte grant Plaintiff leave to amend in compliance with this Memorandum and Order.

§

**I. SUMMARY OF THE COMPLAINT**

Plaintiff alleges Eighth Amendment excessive force and First Amendment retaliation claims against Kyle Simmons ("Simmons"), a correctional officer at the Reception and Treatment Center (the "RTC"), as well as what appears to be a claim of First Amendment retaliation against RTC Warden Taggart Boyd ("Boyd") and unstated

claims against defendant Rob Jeffreys ("Jeffreys"), Director of the Nebraska Department of Correctional Services, in their individual and official capacities.  Filing No. 1 at 2, 4–5; *see also* Filing No. 2 at 2.

Specifically, Plaintiff alleges that on July 5, 2024, while being held in "Unit E2" of the RTC, a "call out" was made to allow inmates of Unit E2 into the "bigger yard/compound."  Filing No. 1 at 2.  Plaintiff submits that per prison policy prison control allows inmates to come and go between the unit and the yard until the closing of the gates and doors is announced.  *Id.*  However, on July 5, Plaintiff contends that he stepped in between the "mini-compound gate" with about 5 minutes still remaining before the gates and doors were to be closed, when, without warning Defendant Simmons slammed the mini-compound gate shut injuring Plaintiff's lower back, right leg and foot.  *Id.*  At the time Plaintiff admits that, although in a lot of pain, he did not complain out of fear Simmons would blame Plaintiff for the incident and write up a false misconduct report as he allegedly had done before.  *Id.* at 2–3.

After the incident, which Plaintiff believes was caught on video, he spoke with E2 Unit Manager Goodspeed and informed him about the incident.  *Id.* at 3.  Plaintiff alleges Goodspeed told him to wait 3 or 4 days to see if Simmons would write a false misconduct report about the incident, after which Plaintiff checked back with Goodspeed on July 9, and none had been written.  *Id.*  After determining no such report had been made, Plaintiff alleges he handed Goodspeed an informal grievance resolution form describing the July 5 incident and his injuries[1] and asked Goodspeed to review the video of the incident and

---

[1] Plaintiff further alleges he has exhausted the grievance process, having filed a Step One grievance to Defendant Boyd on July 31, 2024, (after receiving a response to his informal grievance on July 18, 2024), and later (after receiving a response to his Step One grievance on August 9, 2024), he appealed to Defendant Jeffreys using a Step Two grievance form, where, in response, Jeffreys stated that if Plaintiff

to look into Simmons' behavior towards Plaintiff, which Plaintiff contended would show a pattern of harm by Simmons towards Plaintiff. *Id.* Plaintiff also requested that Simmons be formally charged with assault. *Id.* However, Plaintiff alleges that as of January 27, 2025, none of his concerns regarding Simmons have been addressed and Simmons remains employed at the RTC and has not been charged with assault. *Id.*

Plaintiff also alleges that Simmons threatened him with physical violence in retaliation for Plaintiff's use of the prison grievance system. *Id.* at 5.

Plaintiff submits that because of the Defendants' actions he suffered a lower back injury and emotional distress. Filing No. 1 at 5; Filing No. 2 at 4. As relief, Plaintiff asks for a declaratory judgment finding his rights have been violated as described in his Complaint, a preliminary and permanent injunction ordering Simmons and Boyd to cease their physical violence and threats towards Plaintiff, and damages in the amount of approximately $500,000 from each Defendant as well as recovery of all costs of filing this case. Filing No. 1 at 5; Filing No. 2 at 5.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

---

wished to file charges against Simmons he must contact the Lancaster County Attorney. *See* Filing No. 1 at 4.

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, all of Plaintiff's claims and relief sought in his Complaint must be reviewed to determine if this standard is met.

**A.  Official Capacity Claims under 42 U.S.C. § 1983**

Plaintiff brings suit against all Defendants in their official capacities as employees of the RTC or of the Nebraska Department of Correctional Services.  *See* Filing No. 1 at 2.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 which seek equitable relief from state employee defendants acting in their official capacity.

The RTC and the Nebraska Department of Correctional Services are both state instrumentalities. *See Pointer v. Lincoln Reg'l Ctr.*, No. 8:08CV80, 2008 WL 2773859, at *2 (D. Neb. July 14, 2008). The Defendants are all alleged to be state employees of either the RTC or the Nebraska Department of Correctional Services and, as such, enjoy sovereign immunity for damages claims made against them in their official capacity absent a waiver of immunity by the state or an override of immunity by Congress. There is no indication that Nebraska waived or Congress overrode immunity here. Therefore,

5

Plaintiff's claims against all Defendants in their official capacities for monetary damages shall be dismissed with prejudice.

Sovereign immunity does not, however, bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 which seek equitable relief such as the injunctive relief sought here from state employee defendants Simmons and Boyd acting in their official capacity. Filing No. 2 at 5. In determining whether a preliminary injunction should issue, the Court is required to consider the factors set forth in *Dataphase Systems, Inc. v. C.L. Sys. Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). A district court should weigh "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* A preliminary injunction is considered an extraordinary remedy, and the burden of proving each of the *Dataphase* factors lies with the party seeking the injunction. *Watkins v. Lewis,* 346 F.3d 841, 844 (8th Cir.2003).

Here, Plaintiff does not address any of the factors required for issuance of an injunction against either Simmons or Boyd. Therefore without amendment his official capacity claims against Simmons and Boyd shall be dismissed.

## B. Individual Capacity Claims[2]

As an initial matter, Plaintiff names Jeffreys as a defendant but the Complaint contains no factual allegations from which this Court may reasonably infer that Jeffreys

---

[2] While Plaintiff does not raise a specific claim for failure to follow prison policy relating to the opening and closing of internal prison gates, such a claim cannot proceed as there is no constitutional grounds under § 1983 to raise a claim for failure of prison employees to follow prison policies. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

violated any of Plaintiff's rights under the United States Constitution or federal statutes.

The only discussion of Jeffreys is where Plaintiff describes sending him a grievance and

the response he received.  *See* Filing No. 1 at 4.  The Complaint does not contain any

allegation of how Jeffreys response to Plaintiff's grievance violated any of his rights or

otherwise harmed him nor are any allegations relating to Jeffreys made in the section of

the Complaint titled "Claims."  *See Id.* at 4–5.

Therefore, as pleaded, this Court is entitled to dismiss Defendant Jeffreys from this

action as Plaintiff's Complaint fails to state a plausible claim for relief against him.  *See*

*Krych v. Hvass*, 83 Fed.Appx. 854, 855 (8th Cir. 2003) (holding a court properly dismissed

claims against defendants where pro se complaint was silent as to the defendants except

for their names appearing in the caption).   However, in lieu of dismissal, this Court shall

sua sponte allow Plaintiff 30 days in which to file an amended complaint that states a

plausible claim for relief against Jeffreys, clearly explaining what Jeffreys did to him, when

he did it, and how Jeffreys' actions harmed him.

The Court now moves to Plaintiff's individual capacity claims against defendants

Simmons and Boyd.

**1.  Eighth Amendment excessive force**

"[W]hen the State takes a person into its custody and holds him there against his

will, the Constitution imposes upon it a corresponding duty to assume some responsibility

for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851

(1998) (citation omitted).  A Section 1983 claim for excessive force generally has three

elements: (1) an individual acting under color of law must violate a clearly established

constitutional right by (2) applying excessive force on an arrestee, pretrial detainee, or

prisoner (3) causing actual injury to that arrestee, pretrial detainee, or prisoner. *Carter v. Hassell*, No. 4:05 CV 2259 DDN, 2006 WL 8445532, at *1 (E.D. Mo. Dec. 14, 2006) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). To prevail on such a claim, Plaintiff must allege facts establishing that the force Defendant Simmons used during the July 5, 2024, incident, was employed "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline," *see Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992), or as a result of an accident, *Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994) (citation omitted) ("Accidents, mistakes, [and] negligence . . . are not 'constitutional violations] merely because the victim is a prisoner.'").

To proceed with such a claim, a prisoner must also suffer an actual injury to state an Eighth Amendment claim. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

While Plaintiff's excessive force claim may be able to proceed if amended, in its current state, this Court is left to guess what exactly happened on July 5. Plaintiff alleges that Simmons opened and closed the gate which Plaintiff was standing in, but he does not allege if Simmons saw him, if he notified Simmons or otherwise spoke to him while he was caught in the gate, or Simmon's reaction. Although he contends he needs surgery for multiple back injuries, Plaintiff does not elaborate on the nature of his injuries at the time the incident occurred, who he told about his injuries, or whether he received any medical treatment for his injuries. Although it does appear based on Plaintiff's description of his back injury as requiring surgery, *see* Filing No. 2 at 4, this Court is unable to

determine if the back surgery needed or other injuries listed were caused by the July 5

incident or even whether Simmons was aware his actions caused Plaintiff's injuries.

### 2. First Amendment retaliation

"'[T]he First Amendment prohibits government officials from subjecting an

individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587

U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To proceed

on such a First Amendment retaliation claim, a plaintiff must show that: (1) the plaintiff

engaged in protected activity, (2) the government took adverse action against the plaintiff

that would chill a person of ordinary firmness from continuing in the activity, and (3) the

adverse action was motivated at least in part by the exercise of the protected activity.

*Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022).   And, where no protected

conduct is alleged, a retaliation claim cannot proceed. *Id.*; *see also Albright v. Oliver*, 510

U.S. 266, 271 (1994) (explaining that because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, it follows that the first step in an action

under § 1983 is to identify the specific constitutional right allegedly infringed).

Here, there is no question that the filing of a prison grievance is a protected activity,

*see e.g. Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (the filing of a prison

grievance is constitutionally protected conduct), and that Simmons' and Boyd's alleged

threats and physical violence are adverse actions which would chill the ordinary person

from continuing a constitutionally protected activity.   Filing No. 2 at 5.   However, while

Plaintiff concludes that Simmons and Boyd retaliated against him due to his filing of the

grievance, without some description of their behavior and a connection between their

behavior and the grievance filed, this Court is unable to accept Plaintiff's conclusion as

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wit v. City of Lincoln, Nebraska*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D. Neb. Apr. 2, 2019) (citing *Iqbal*, 556 U.S. at 678).  While Plaintiff seeks an injunction to, in relevant part, require Boyd to cease his physical violence and threats against Plaintiff, the Complaint contains no allegations that Boyd ever threatened or otherwise touched Plaintiff.  *See generally* Filing No. 1.  And, while Plaintiff does allege Simmons harmed him, without any additional facts explaining the behavior of Simmons and Boyd including some description of the alleged threats and physical violence and facts which establish the violence and threats alleged are connected to Plaintiff's filing of grievances, this claim cannot proceed.

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's Amended Complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A.  However, in lieu of dismissal, on the Court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file a second amended complaint that sufficiently describes his claims, including naming defendants capable of being sued.  *Plaintiff should be mindful to clearly explain what each defendant did to him, when each defendant did it, how each defendant's actions harmed him, and what specific legal rights Plaintiff believes each defendant violated.  Put another way, the Court cannot guess as to what each defendant did and when; therefore, Plaintiff should set forth factual allegations that establish who each defendant is, when and how they were involved with Plaintiff, and what claims Plaintiff alleges against each of them.*

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, his Complaint will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.   All claims for monetary damages against all defendants in their official capacities are dismissed with prejudice.

2.   Plaintiff shall have until **September 24, 2025**, to file an amended complaint addressing the remaining claims and any other claims Plaintiff may seek to raise against the defendants in their individual capacities only.

3.   If Plaintiff decides to proceed and file an amended complaint he must: Clearly state a claim or claims upon which relief may be granted against any and all named defendants in accordance with this Memorandum and Order.  **Plaintiff is warned that an amended complaint will supersede, not supplement, the previously filed Complaint.  Plaintiff must include all of the claims he wishes to pursue against all individuals he has named or will name as defendants that he wishes to proceed against in his amended complaint.  Further, Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when and where the defendant did it, and how the defendant's actions harmed him as described in detail in this Memorandum and Order.**

4.    If Plaintiff fails to file an amended complaint or otherwise respond to this Memorandum and Order, Plaintiff's Complaint will be dismissed without prejudice and without further notice.

5.    To the extent Plaintiff requires additional time to comply with this Memorandum and Order, he must seek an extension via filing a written motion on or before the September 24, 2025, deadline for compliance.

6.    The Clerk of the Court is directed to send Plaintiff the Form Pro Se 14 ("Complaint for Violation of Civil Rights (Prisoner)").

7.    The Clerk's Office is further directed to set a pro se case management deadline in this case using the following text: **September 24, 2025:** Check for amended complaint.

Dated this 25th day of August, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court