IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DONELL KING,

              Plaintiff,

      vs.

ROB JEFFREYS, Director of the Nebraska
Department of Correctional Services, in their
Individual Capacities; TAGGART BOYD,
Warden of the Reception & Treatment
Center, in their Individual Capacities; KYLE
SIMMONS, Correctional Officer at the
Reception & Treatment Center, in their
Individual Capacities; COLTON
GOODSPEED, Unit Manager at the
Reception & Treatment Center, in their
Individual Capacities; MICHAEL
CORDONIER, Unit Manager at the
Reception & Treatment Center, in their
Individual Capacities; and AMANDA
MESSNER, Case Manager at the Reception
& Treatment Center, in their Individual
Capacities;

              Defendants.

4:25CV3022

**MEMORANDUM AND ORDER**

This matter is before the Court for initial review of Plaintiff Donnell King's ("Plaintiff")

Amended Complaint, Filing No. 19, and a motion which this Court construes as seeking

confirmation that his Amended Complaint was received by this Court (the "Motion"), Filing

No. 20. The Motion shall be granted. The Court confirms that the Amended Complaint

was received and now performs an initial review of the Amended Complaint pursuant to

28 U.S.C. §§ 1915(e) and 1915A to determine whether summary dismissal is appropriate.

For the reasons that follow, this Court finds that only Plaintiff's Eighth Amendment

excessive force claim and his First Amendment retaliation claim against Defendant Kyle

Simmons may proceed and the remainder of Plaintiff's claims shall be dismissed in accordance with this Memorandum and Order.

## I. BACKGROUND AND CLAIMS

Plaintiff brings this suit under 42 U.S.C. § 1983, against Defendant Rob Jeffreys ("Jeffreys") as Director of the Nebraska Department of Correctional Services ("NDCS") in his individual capacity, and Taggart Boyd ("Boyd"), Kyle Simmons ("Simmons"), Colton Goodspeed ("Goodspeed"), Michael Cordonier ("Cordonier"), and Amanda Messner ("Messner"), as employees of the Nebraska Reception and Treatment Center (the "RTC"), also in their individual capacities. Filing No. 19 at 1-2.  Against these defendants Plaintiff alleges multiple Eighth Amendment claims, a First Amendment retaliation claim, failure to follow or provide access to institutional grievance procedures, and state law negligence claims, all stemming from events taking place while Plaintiff was incarcerated at the RTC.[1]

Specifically, Plaintiff, who has Irritable Bowel Syndrome ("IBS"), alleges that on January 8, 2024, he was attempting to return to his unit after finishing work so he could use the restroom as no other restrooms were available in the area where he was.  He contends that Simmons refused to grant him entry. *Id.* at 3-4.  Plaintiff submits that the gates were closed to his unit so he showed a pass establishing he had just gotten off work and a medical pass establishing he suffered from IBS to Defendant Simmons (who was the officer in charge at the time), and told him he was not feeling well and that he needed to return to his unit to use the toilet, but Simmons denied Plaintiff access and

---

[1] Throughout his Amended Complaint Plaintiff describes multiple defendants as violating prison policies. *See e.g.* Filing No. 19 at 4 (alleging Simmons violated prison policy in refusing him access to a restroom). While Plaintiff does not allege any formal claims for violation of prison policy, even if he had, such a claim is not cognizable as there is no claim under § 1983 for failure of prison employees to follow prison policies. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

2

stated he did not care if Plaintiff defecated on himself. *Id.* Plaintiff then attempted to speak to the "yard sergeant" turnkey to gain access to the restroom in the gym but the turnkey also refused, telling Plaintiff to wait until "gates & doors" in 30 minutes. *Id.* at 4. Ultimately Plaintiff was unable to wait and after 5 to 10 minutes he urinated and defecated on himself, but Simmons still refused to allow Plaintiff entry until "gates & doors" was called. *Id.* at 5.

After Plaintiff was able to gain entry and clean himself up, he spoke with Unit Manager Cordonier, who told Plaintiff he was going to speak to Simmons and suggested Plaintiff fill out a grievance form and give the form back to Cordonier. *Id.* Plaintiff explains that he does not know if Cordonier spoke to Simmons, but alleges that on January 10, 2024, Cordonier was assaulted by an inmate resulting in a lot of Cordonier's paperwork being bloodied and being taken as part of a crime scene. *Id.* Plaintiff alleges that he filled out the grievance form and gave it back to Cordonier, and it appears that via his description of the injuries to Cordonier and the damage to his paperwork that Plaintiff insinuates that his grievance form was not submitted by Cordonier due to Cordonier's assault. *Id.* Several days later Plaintiff alleges he spoke with Defendant Messner to find out whether Cordonier submitted his grievance and Messner indicated he would look into it. *Id.* at 6. Several more days passed before Messner confirmed she had located this grievance and that she was working on a response. *Id.*

A week later, after receiving no response to his initial grievance, Plaintiff submitted a new grievance about the January 8 incident to Defendant Goodspeed, who read the grievance and told Plaintiff while sympathetic that his new grievance was filed too late. *Id.* Plaintiff then spoke to Defendant Boyd about his first grievance not being responded

3

to and Boyd informed him he would look into it. *Id.* However, Plaintiff alleges that he never heard from Boyd after that or anyone else at the RTC regarding his initial grievance.

Several weeks passed when Defendant Jeffreys visited the RTC, at which time Plaintiff alleges he spoke to Jeffreys regarding his initial grievance, but Jeffreys became very "confrontational and argumentative" with Plaintiff, calling him a liar, ultimately ordering a correctional officer to handcuff Plaintiff and place him in a holding cell. *Id.* at 7. Several hours later Plaintiff submits Jeffreys returned, threatening to transfer Plaintiff if he did not admit he lied and failed to apologize to Simmons. *Id.* Plaintiff alleges Jeffreys, however, did not write up a misconduct or incident report. *Id.*

That same day Plaintiff alleges he filed an informal grievance regarding Jeffreys' treatment of him, giving the grievance to Defendant Messner. *Id.* at 8. Plaintiff alleges he did not get a response to that grievance either, but he did not follow up on it due to fear of retaliation. *Id.*

In May of 2024, Plaintiff alleges Simmons made a threatening comment to Plaintiff and followed up by telling Plaintiff to file a grievance, ultimately telling Plaintiff to shut up before he "shits his pants again." *Id.* Simmons then told Plaintiff to either go back to his unit or spend the rest of the day in a holding cell. *Id.* Plaintiff then informed Boyd of Simmon's actions telling him that every grievance he filed against Simmons had "disappeared" in the past and that he was afraid to file anything else due to physical or other retaliation from Simmons. *Id.* Boyd told Plaintiff he would look into Simmons, but that Boyd again did not get back to him. *Id.* at 9.

Plaintiff alleges that on June 15, 2024, Simmons filed what he contends was a false misconduct report alleging Plaintiff was in an unauthorized area without a pass, that

Plaintiff was given two verbal warnings about being there, and ultimately Plaintiff tried to assault Simmons by lunging at him. *Id.* Plaintiff states that correctional officer Atodo was present when the alleged assault took place and can confirm (along with facility video) that Plaintiff never lunged at Simmons. *Id.* Plaintiff alleges per institutional policy he is unable to file a grievance regarding the false misconduct report. *Id.*

Plaintiff submits that on July 5, 2024, although institutional policy allows inmates to the "bigger yard" through the "mini-compounds gate" within a 10 minute period, 5 minutes until closing of the gates and doors Simmons, without any warning, slammed the mini-compound gate into Plaintiff who was standing there. *Id.* at 9-10. The gate hit Plaintiff's lower back and back of his right leg and foot numerous times causing Plaintiff to scream. *Id.* at 10. While the gate was hitting Plaintiff, Simmons said "that's what you get bitch" to Plaintiff until the gate locked and then walked away like nothing happened. *Id.*

Plaintiff alleges he did not seek medical attention due to being in so much pain and out of fear Simmons would write up another false misconduct report. *Id.* As a result of the gate-incident, Plaintiff alleges he had difficulty walking and remains in a lot of pain, including numbness and tingling on his right side from his waist to his foot, exacerbating old injuries and creating new injuries.[2] *Id.* at 11, 14. He alleges the pain is so severe he usually cannot stand and that he requires surgery to repair the damage. *Id.* at 14.

A few days after the gate incident, Plaintiff informed Goodspeed of the incident, told him that he had been waiting to see if Simmons was going to write a false misconduct

---

[2] Plaintiff describes his old and new injuries as "[d]amage to the vertebal endplates Plaintiff L3-L4; L4-L5; L5-S1" for which he underwent a "Bilateral L3,L4,L5 facet nerve block under fluoroscopy" on August 26, 2025. Filing No. 19 at 11 (spelling as in original).

5

report about the incident, and asked Goodspeed if any medical calls had been made the day of the gate incident, to which Goodspeed responded no such call had been made. *Id.* at 11-12. On July 9, 2024, after confirming no incident reports about the gate incident had been written, Plaintiff gave Goodspeed an informal grievance describing the gate-incident, his injuries, and requesting Goodspeed look at the video from that day and Simmons' past behavior. *Id.* at 12. Plaintiff alleges he also "requested" Boyd and Jeffreys have formal charges brought against Simmons, but to date none of Plaintiff's grievances or concerns have been addressed. *Id.*

Plaintiff alleges that, as a result of the multiple grievances he filed (which have been lost or not responded to), he received threats from unnamed correctional staff members to stop filing grievances against Simmons, Boyd, and Jeffreys or Plaintiff will be sent to a "super-maximum prison" and RTC staff members have become increasingly "confrontational and aggressive" towards Plaintiff. *Id.* at 13. He alleges he has been wrongfully terminated from his job at RTC, also in violation of prison policy, resulting in his being unable to purchase products. *Id.*

Plaintiff submits that around July 23, 2024, he was called to medical for a use-of-force assessment evaluation, where his blood pressure was checked and he was asked about what injuries he suffered from the gate incident. *Id.*

Plaintiff alleges the following claims:

1. Eighth Amendment claims of failure to protect/deliberate indifference to Plaintiff's safety against all Defendants.[3]

---

[3] As discussed herein, a deliberate indifference claim for indifference to a risk of harm or for failure to protect, requires an incarcerated person to establish the same elements. *See Daywitt v. Harpstead*, No. CV 19-2632 (PAM/KMM), 2020 WL 2557946, at *1 (D. Minn. May 20, 2020). Therefore, the Court shall consider Plaintiff's deliberate indifference to safety and failure to protect claims together.

2.  Claims for violation of prison grievance procedures against all Defendants.

3.  Eighth Amendment excessive force claims against Simmons.

4.  First Amendment retaliation claims against Simmons, Cordonier, Messner, and Goodspeed.

5.  State law negligence claims for failure to protect against Jeffreys and Boyd.

*Id.* at 14-19.

As relief Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages.  *Id.* at 19-22.

## II.  APPLICABLE STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).  The allegations must state enough about each claim to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," *Topchian v. J.P. Morgan Chase Bank*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted), complaints filed by *pro se*

7

plaintiffs must contain enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Twombly*, 550 U.S. at 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Title 42 of the United States Code, section 1983 allows individuals to bring suit against persons who, under color of state law, have caused them to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 itself "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985) (citations omitted). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION

**A. Eighth Amendment Claims**

#### 1.  Failure to protect/deliberate indifference to safety

Prison officials must take reasonable steps to ensure the well-being of prisoners, and the failure to do so may constitute deliberate indifference. E.g., *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). "A deliberate-indifference claim, whether for indifference to a risk of harm or for failure to protect, requires the [prisoner] to establish both that 'the deprivation alleged must be, objectively, sufficiently serious,' (quotation omitted), and that the defendants were subjectively deliberately indifferent to the [prisoner's] health or

safety." *Daywitt v. Harpstead*, No. CV 19-2632 (PAM/KMM), 2020 WL 2557946, at *1 (D. Minn. May 20, 2020) (quoting *Farmer*, 511 U.S. at 834; citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1977)).  A plaintiff must proffer sufficient evidence to show (i) "the conditions that result from the failure to protect the inmate ... pose[d] a substantial risk of serious harm," and (ii) the prison official acted with a "sufficiently culpable state of mind, that is, [was] deliberately indifferent to [that] substantial risk of serious harm." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir.2007).

An objectively serious deprivation means that the detainee is held "under conditions posing a substantial risk of serious harm." *Irving v. Dormire*, 519 F.3d 441, 447 (8th Cir. 2008). An official is subjectively deliberately indifferent only if "the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and [ ] the official [actually] drew that inference." *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998). Jail officials who "respond reasonably to a perceived risk" do not violate the Eighth Amendment "even if the harm ultimately was not averted." *Prater v. Dahm,* 89 F.3d 538, 542 (8th Cir. 1996) (quotation omitted).

Here, in relation to Defendants Jeffreys, Boyd, Goodspeed and Messner, Plaintiff asserts no facts which establish they would have been on notice that Plaintiff was being held under conditions which posed a risk of serious harm.  To prevail, Plaintiff must demonstrate that the risk of serious harm was obvious enough to support the inference that Defendants knew the risk to him existed.  *Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019) (citing *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)).  And, Plaintiff must show that Defendants "had been exposed to information concerning the risk and thus 'must have known' about it." *Id.* (quoting *Letterman*, 789 F.3d at 862 (quoting *Farmer*,

511 U.S. at 842)).  As Plaintiff fails to establish that any of these Defendants knew or should have known that Simmons would slam the gate on Plaintiff after he complained of Simmons' previous behavior, his deliberate indifference/failure to protect claims against Jeffreys, Boyd, Goodspeed and Messner must fail.   As to Simmons, Plaintiff's claims against him result from what Plaintiff contends was a deliberate action by Simmons' which caused Plaintiff harm.  This is not a failure to protect Plaintiff or a deliberate indifference to his safety.   Such claims fall under Plaintiff's excessive force claim and shall be addressed therein.

For these reasons, Plaintiff's deliberate indifference/failure to protect claims against all Defendants shall be dismissed without prejudice.

### 2.  Excessive force

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted).  A Section 1983 claim for excessive force generally has three elements: (1) an individual acting under color of law must violate a clearly established constitutional right by (2) applying excessive force on an arrestee, pretrial detainee, or prisoner (3) causing actual injury to that arrestee, pretrial detainee, or prisoner. *Carter v. Hassell*, No. 4:05 CV 2259 DDN, 2006 WL 8445532, at *1 (E.D. Mo. Dec. 14, 2006) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  To prevail on such a claim, Plaintiff must allege facts establishing that the force Defendant Simmons used during the July 5, 2024, gate incident, was employed "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline," *see Hudson v. McMillian*, 503 U.S.

10

1, 6–7 (1992), or as a result of an accident, *Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994) (citation omitted) ("Accidents, mistakes, [and] negligence . . . are not 'constitutional violations] merely because the victim is a prisoner.'"). And to proceed with such a claim, a prisoner must also suffer an actual injury to state an Eighth Amendment claim. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Liberally construing these allegations, the Court finds that Plaintiff's excessive force claim against Defendant Simmons in his individual capacity is adequately pleaded for purposes of this initial review. The Court shall order service on Simmons for this claim in this Memorandum and Order.

## B. First Amendment Retaliation

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To proceed on such a First Amendment retaliation claim, a plaintiff must show that: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022). And, where no protected conduct is alleged, a retaliation claim cannot proceed. *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (explaining that because § 1983 is a method for vindicating federal

11

rights, not a source of substantive rights itself, it follows that the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed).

Here, there is no question that the filing of a prison grievance is a protected activity. *See e.g.* *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (the filing of a prison grievance is constitutionally protected conduct).  However, Plaintiff does not allege that any of the actions of Cordonier, Messner, or Goodspeed were done in retaliation for Plaintiff's filing of grievances.  Instead, he alleges that *unnamed correctional staff members* threatened to send him to a super-maximum prison if he did not stop filing grievances against Simmons, Boyd, and Jeffreys and that unnamed correctional staff told him to stop lying about Simmons assaulting him.  Filing No. 19 at 13.  This is certainly not enough to proceed against Cordonier, Messner, or Goodspeed.  In relation to Simmons, slamming the gate on Plaintiff is an adverse action which would chill an ordinary person from continuing a constitutionally protected activity such as filing grievances.  And, for the purpose of this initial review, Plaintif's allegation that Simmons yelled "that's what you get bitch" while the gate was hitting Plaintiff , *see Id.* at 10, is enough to proceed against Simmons here.

## C.  State Law Negligence

Plaintiff also appears to raise state law negligence claims against Jeffreys and Boyd, alleging they owed him a duty of care to protect him from being physically assaulted by Simmons.  Filing No. 19 at 18.

This claim is governed by the Nebraska State Tort Claims Act ("STCA"), Neb. Rev. Stat. §§ 81-8,209, *et seq*., which provides in part: "The State of Nebraska shall not be liable for the torts of its . . . employees, and no suit shall be maintained against the . . .

12

employee . . . on any tort claim except to the extent, and only to the extent, provided by the State Tort Claims Act." Neb. Rev. Stat. § 81-8,209. A "tort claim" under the STCA is "any claim against an employee of the state for money only on account of . . . personal injury . . . caused by the negligent or wrongful act or omission of the employee while acting within the scope of his or her employment." Neb. Rev. Stat. § 81-8,210(4).

Here, Plaintiff's claims are clearly based on actions taken by Jeffreys and Boyd during the course and scope of their employment. Therefore, Plaintiff is limited to asserting state-law claims against Jeffreys and Boyd in their official capacity under the STCA, and his individual capacity state-law negligence claim against them must be dismissed. *See Bohl v. Buffalo County*, 557 N.W.2d 668, 673 (Neb. 1997) (if off-duty police officer was acting within the scope of his employment, the Tort Claims Act would apply and bar a suit against the officer in his individual capacity); *Bojanski v. Foley*, 798 N.W.2d 134, 144 (Neb. App. 2011) (State Tort Claims Act provides immunity when defendant is sued in his individual capacity, but is acting within the scope of his employment or office, unless such immunity has been waived); *Guerry v. Frakes*, No. 8:15CV323, 2016 WL 4991501, at *2 (D. Neb. Sept. 16, 2016) (pursuant to State Tort Claims Act, state-law claims against prison officials in their individual capacities dismissed because plaintiff's claims were based on conduct occurring during the course and scope of their employment).

Moreover, "[s]ection 81-8,209 of the STCA bars tort claims against the State, its agencies, and its employees unless the State has waived its immunity for the claim." *Davis v. State of Neb.*, 902 N.W.2d 165, 180 (Neb. 2017). The STCA grants exclusive jurisdiction over those claims to "the district court of the county in which the act or

13

omission complained of occurred . . . ." Neb. Rev. Stat. § 81-8,214. Consequently, any waiver of the State's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Montin v. Moore*, 846 F.3d 289, 293 (8th Cir. 2017); *see Carter v. Muldoon*, No. 8:17CV319, 2018 WL 2049841, at *6 (D. Neb. May 1, 2018) (no subject-matter jurisdiction over STCA claim); *Guerry*, 2016 WL 4991501, at *3 (dismissing without prejudice state-law claims alleged against NDCS and NDCS employees in their official capacities). "State sovereign immunity bars actions in federal court regardless of the basis for otherwise appropriate subject matter jurisdiction." *Montin*, 846 F.3d at 293; *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002) (holding the Eleventh Amendment bars actions in federal court even where 28 U.S.C. § 1367, in general, authorizes supplemental jurisdiction). Thus, Plaintiff must bring his state-law negligence claim against Jeffreys and Boyd in state court.

In summary, because Jeffreys and Boyd are employees of a state agency, and because any alleged tortious conduct attributed to them was carried out within the scope of their employment, any tort claim against Jeffreys or Boyd must be brought under the STCA in their official capacities. Moreover, because the STCA provides exclusive jurisdiction for such cases in Nebraska's state district courts, and because Nebraska has not waived its sovereign immunity for negligence suits in federal court through the STCA, this Court cannot exercise subject-matter jurisdiction over Plaintiff's state-law negligence claims. As such, Plaintiff's state-law claim against Jeffreys and Boyd will be dismissed.

## D. Prison Grievance Procedure Violations

While unclear, to the extent Plaintiff claims Defendants failed to address grievances or to file grievances on his behalf, *see e.g.* Filing No. 19 at 6 (alleging

Cordonier failed to submit the grievance given to him by Plaintiff and Messner told him she was going to try to locate the grievance and respond to it but she never did), such claims must fail. "Inmates do not have a constitutionally protected right to a grievance procedure. Because a ... grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the ... grievance procedure is not actionable under § 1983." *Hildebrand v. Kugler*, No. 1:19-CV-01006, 2019 WL 2134622, at *1 (W.D. Ark. May 3, 2019), *report and recommendation adopted*, No. 1:19-CV-1006, 2019 WL 2130152 (W.D. Ark. May 15, 2019) (quotation and citation omitted) (collecting cases).

### E. Unavailable Relief

To the extent Plaintiff seeks criminal charges to be brought against Defendant Simmons for "physically assaulting" Plaintiff, *see* Filing No. 19 at 2-3, this Court is unable to grant such relief. *See e.g. Hulbin v. White*, No. CV 19-174-P, 2020 WL 13724233, at *1 (W.D. La. Apr. 14, 2020) (dismissing case brought pursuant to 42 U.S.C. § 1983 seeking criminal charges against other individuals as outside the scope of relief available).

IT IS THEREFORE ORDERED that:

1.     Plaintiff's motion seeking confirmation that his Amended Complaint was received by this Court, Filing No. 20, is granted.  The Amended Complaint was received, and its initial review is set forth herein.

2.     Plaintiff's state-law negligence claim against Defendants Boyd and Jeffreys in their individual capacities is dismissed with prejudice.

3.      To the extent Plaintiff alleges a state-law negligence claim against Defendants Boyd and Jeffreys in their official capacities, such claims are dismissed without prejudice to reassertion in state court.

4.      Only Plaintiff's Eighth Amendment excessive force claim and his First Amendment retaliation claim against defendant Simmons in his individual capacity shall be allowed to proceed.  All remaining claims against all defendants shall be dismissed without prejudice.

5.      For service of process on defendant Kyle Simmons in his individual capacity, the Clerk of Court is directed to complete two sets of summons and USM-285 forms for such defendant.  The address for the first set of forms is:

Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509.

The address for the second set of forms is:

Nebraska Reception and Treatment Center
3220 W. Van Dorn
Lincoln, NE 68522.

6.      The Clerk of Court shall forward the summons forms and USM-285 forms together with sufficient copies of the Amended Complaint, Filing No. 19, and a copy of this Memorandum and Order to the United States Marshals Service.

7.      The Marshals Service shall serve defendants Kyle Simmons in his individual capacity by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General."  Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the

16

State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

8.     The United States Marshals Service also shall serve defendant Kyle Simmons in his individual capacity by certified mail or other authorized method of service at the Nebraska Reception and Treatment Center address shown above. See Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

9.     For service by certified mail or designated delivery service, the Marshals Service shall send the summons to defendant within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service.  *See* Neb. Rev. Stat. § 25-505.01(1).

10.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[4]

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. Wright v. First Student, Inc., 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See* Moore v. Jackson, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).  *See also* Beyer v. Pulaski County Jail, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); Graham v. Satkoski, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

11.    Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

12.    Plaintiff is hereby notified that failure to obtain service of process on the defendant Kyle Simmons within 90 days of the date of this order may result in dismissal of this matter without further notice.  A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

13.    The Clerk of Court is directed to set a case management deadline in this case with the following text: **May 18, 2026**: service of process to be completed.

14.    The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 17th day of February, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge